# **EXHIBIT 1**

## **[APA]**

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement ("Agreement") is made on February 13, 2020, by and between seller Don A. Beskrone, solely in his capacity as Chapter 7 Trustee of Arena Football League LLC (hereafter, the "Trustee" or "Seller"), and buyer The Team Management, LLC, an Ohio limited liability company (hereafter, the "Buyer").

## RECITALS

WHEREAS, on November 27, 2019 (the "Petition Date"), Arena Football League LLC (the "Debtor") filed in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a voluntary petition under chapter 7 of the United States Bankruptcy Code;

WHEREAS, the Trustee has been appointed to serve as chapter 7 trustee for the Debtor in its bankruptcy case (Case No. 19-12541 (JTD));

WHEREAS, prior to the Petition Date, the Debtor owned and operated the Arena Football League (the "League"), a professional indoor tackle football league;

WHEREAS, Seller desires to sell certain assets relating to the Business (as hereinafter defined), and Buyer desires to acquire those assets from Seller on the terms and subject to the conditions set forth in this Agreement;

WHEREAS, the assets being transferred herein are to be sold, conveyed and transferred to Buyer free and clear of all liens, claims, interests, and encumbrances pursuant to section 363 of the Bankruptcy Code and the terms and provisions of the Sale Order (as hereinafter defined).

NOW, THEREFORE, in consideration of the promises and of the mutual agreements and covenants hereinafter set forth, and intending to be legally bound hereby, Buyer and Seller agree as follows:

## ARTICLE I

## DEFINITIONS

As used in this Agreement, the following terms shall have the following meanings:

1.1.     "Action" means any claim, action, cause of action, suit, arbitration, inquiry, investigation, proceedings or investigation by or before any court or any governmental or other regulatory or administrative agency, commission, or arbitration tribunal.

1.2.     "Ancillary Documents" means such other agreements, documents and instruments as are to be executed and delivered by Buyer and/or Seller pursuant hereto, including, without limitation, the Bill of Sale.

1.3.      "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended, and all Rules promulgated thereunder constituting Title 11 of the United States Code.

1.4.      "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

1.5.      "Bankruptcy Case" means the chapter 7 case of Arena Football League LLC now pending in the Bankruptcy Court and captioned *In re Arena Football League LLC*, Case No. 19-12541 (JTD).

1.6.      "Bill of Sale" means a bill of sale to be delivered at Closing providing for, among other things, the transfer to Buyer of all of Seller's and Debtor's rights, title, and interests in the Purchased Assets.

1.7.      "Business" means the operations of the League as conducted by the Debtor prior to the Petition Date.

1.8.      "Columbus Locations" means each and all of only the following locations, substantially as listed by the Debtor in its SOFAs at pages 114 and 115 of 160: (i) 3410 East 5th Avenue, Columbus, Ohio 43219; (ii) 3245 East 5th Ave, Columbus, Ohio; (iii) 33 N. 3rd Street, Suite 300, Columbus, Ohio 43215; (iv) Speedway Storage Facility, 3304 East Broad Street, Columbus, Ohio 43210; and (v) Bo Jackson Elite Sports Facility, 4696 Cosgray Road, Hilliard, Ohio 43026.

1.9.      "Excluded Assets" means the following assets, property, or property of the estate of Seller or Debtor, as of the date of Closing, which assets, property, or property of the estate include:

(i)      Any assets or property not located in or at the Columbus Locations;

(ii)      Any assets or property not utilized by the Columbus Destroyers;

(iii)      any contracts, leases, or other agreements, except as may be specifically listed as Purchased Assets;

(iv)      all Receivables arising from or in connection with the Debtor, the League, or otherwise;

(v)      Seller's rights in or with respect to any asserted or assertable Action (including any Action under chapter 5 of the Bankruptcy Code), pursuant to any applicable law;

(vi)      all cash or cash equivalents of Seller, including all collections of any Receivables;

(vii)     Debtor's corporate minute books and other business and corporate records;

(viii)    prepaid expenses or deposits related to (a) any real property lease or any other contract, (b) any returned or unearned premiums related to any insurance coverage (such as property or liability insurance), and (c) any utilities;

(ix)      any tax (local, state, or federal) or insurance-related refunds; and

(x)       any other intangible assets, including without limitation any domain names, websites, customer lists, marketing lists, or intellectual property in the form of patents, copyrights, and trademarks (based on federal, state, or common law, and all registrations or applications relating to any of the foregoing).

1.10.     "Liabilities" means any and all debts, liabilities, losses, claims, damages, costs, expenses and obligations, whether fixed or contingent, matured or unmatured, including, without limitation, those arising under any law, rule, regulation, Action, order or consent decree of any governmental entity or any award of any arbitrator of any kind, and those arising under any contract, commitment or undertaking.

1.11.     "Liens" means any and all liens, mortgages, pledges, security interests, charges, claims, demands, judgments, contracts, options, pledges, liabilities, debts, restrictions, interests, or other encumbrances or defects of title of any nature whatsoever.

1.12.     "Purchased Assets" means all of the Debtor's right, title, and interests in the following property and assets, which property and assets do not include any Excluded Assets:

(i)       All tangible assets and personal property located in or at the Columbus Locations, as listed by the Debtor on its Schedules at page 13 of 160 and its SOFAs at pages 114 and 115 of 160, respectively.

          Such tangible assets include all of the personal property comprising the Columbus "field system" (including any goal posts, dasher boards, artificial turf, support rods, inflatable walls, and netting systems); all computers and computer equipment, televisions and their related dressers, cabinets or stands, office equipment, office supplies, video equipment, cameras and their related equipment, lockers, storage trunks, and furniture; all footballs, helmets, shoulder pads, tackling dummies, field goal nets, down markers, coolers, water bottles, equipment bags, travel bags, medical equipment, headsets and headphones, and any other football-specific property and equipment used by the Columbus Destroyers and located in or at the Columbus Locations; all T-shirts, pants, practice jerseys, and other clothing and apparel located in or at the Columbus Locations; and all Columbus Destroyer merchandise and apparel located in or at the Columbus Locations.

1.13.    "Receivables" means any and all accounts receivable, notes, rights to payment, and other accounts receivable from third parties including, without limitation, arising from Debtor's conduct of the Business, whether or not in the ordinary course of business, together with any unpaid interest or financing charges accrued thereon.

1.14.    "Sale Order" means an order of the Bankruptcy Court authorizing the sale of assets contemplated by and provided for in this Agreement.

1.15.    "Schedules" means the Schedules of Assets and Liabilities filed by the Debtor on the Petition Date.

1.16.    "SOFAs" means the Statement of Financial Affairs filed by the Debtor on the Petition Date.

1.17.    "Tax" or "Taxes" means all income, gross receipts, transfer, gains, sales, use, employment, franchise, profits, property or other taxes, fees, stamp taxes and duties, assessments, or charges of any kind whatsoever (whether payable directly or by withholding) together with any interest and any penalties, and any additional amounts imposed by any taxing authority with respect thereto.

# ARTICLE II

## PURCHASE AND SALE

Section 2.1.    Purchase and Sale.  On the terms and subject to the conditions set forth in this Agreement, at the Closing (as hereinafter defined) Seller shall sell the Purchased Assets to Buyer free and clear of all Liens in exchange for Buyer's payment of the Purchase Price.

Section 2.2.    Liabilities Assumed.   Buyer shall assume liability and responsibility for all storage fees and removal costs related to the Purchased Assets and the Columbus Locations.  After Closing, Buyer shall be responsible for arranging and effectuating the removal of the Purchased Assets from the Columbus Locations.

Section 2.3.    No Liabilities Assumed.  Other than as set forth in section 2.2 above, Buyer shall not and does not assume any Liabilities, Taxes or obligations of Debtor or Seller accruing or arising prior or subsequent to the Closing Date. Without limiting the foregoing, Buyer expressly is not assuming any of the following liabilities, whether accrued or fixed, absolute or contingent, known or unknown, determined or determinable, and whenever arising:

(i)    any liabilities and obligations of Seller or Debtor for federal, state, local or foreign Taxes (including franchise, income, single business, sales, use, payroll, occupation, property, excise, withholding, transfer and other taxes);

(ii)    any claim (as defined in section 101(5) of the Bankruptcy Code), Liens, demands, liabilities or obligations of any nature whatsoever (including, without limitation, claims, demands, liabilities or obligations in respect of advances or loans, goods sold, environmental matters, employee-related claims, occupational safety, workers' or workmen's compensation, grievance

{01535977;v2 }                                        4

proceedings or actual or threatened litigation, suits, claims, demands or governmental proceedings) which arose or were incurred on or before the Closing Date, or which are based on events occurring or conditions existing on or before the Closing Date, or which are based on Business conducted by Debtor on or before the Closing Date;

(iii)    any liabilities and obligations of Seller under this Agreement, any bill of sale or related instrument issued in connection with this Agreement or otherwise in connection with the transactions contemplated by this Agreement; and

(iv)    any liabilities of Debtor to former employees (or their beneficiaries), consultants, or agents for any compensation, severance, pension contribution or other benefits accrued or otherwise payable, and any liabilities or obligations owed to members of the Debtor; and

(v)     unless expressly assumed by Purchaser, any liabilities or obligations owed pursuant to any contract of the Debtor.

Section 2.4.    <u>Consideration</u>. The aggregate consideration  for the Purchased Assets shall be Fifty Thousand and 00/100 Dollars ($50,000.00) (the "<u>Purchase Price</u>"), subject to increase if Buyer elects to participate in any auction or other process convened by the Trustee in the event Trustee receives a higher or better offer(s) for the Purchased Assets prior to the Sale Hearing. Upon execution of this Agreement by Buyer and prior to filing of sale motion papers by Seller, Buyer shall wire transfer to counsel for Seller the sum of $25,000 (the "<u>Deposit</u>").  Counsel for Seller will hold the Deposit in a non-interest bearing account pending a sale hearing in the Bankruptcy Court to consider approval of the sale of the Purchased Assets.  If Buyer is not approved (for reasons other than Buyer is in breach of this Agreement) as purchaser of the Purchased Assets, counsel for Seller shall return the Deposit (without interest) to Buyer within three business days following the conclusion of the sale hearing.  If Buyer is approved as purchaser of the Purchased Assets, Seller shall apply the Deposit toward the Purchase Price at Closing.  The full Purchase Price, net of any Deposit, shall be due and payable by Buyer to the Trustee by wire transfer of immediately available funds on the date of Closing.

Section 2.5.    <u>Closing</u>.

(a)    Subject to the terms and conditions of this Agreement, the sale and purchase contemplated hereby shall take place at a closing (the "<u>Closing</u>") on or before a date that is two (2) business days after entry of the Sale Order, provided any otherwise applicable stay under Fed. R. Bankr. P. 6004(h) is waived and not in effect and there is no other stay of the Sale Order in effect (the "<u>Closing Date</u>"). Otherwise, the Closing Date shall occur two (2) business days after the Sale Order becomes final and non-appealable.

(b)    At the Closing, Seller shall deliver, or cause to be delivered, to Buyer a Bill of Sale in an acceptable form to be furnished to Buyer for review before Closing, and any such other ancillary documents or instruments as may be reasonably requested and prepared by Buyer to transfer the Purchased Assets to Buyer or evidence such transfer upon the public records.

**ARTICLE III**

**REPRESENTATIONS AND WARRANTIES OF SELLER**

As an inducement to Buyer to enter into this Agreement, knowing and intending that Buyer is relying hereon in entering into this Agreement and the transactions contemplated hereby, Seller represents and warrants to Buyer as follows:

Section 3.1.    <u>Authorization of Agreement; No Conflict; Consents</u>.

Subject to entry of an order by the Bankruptcy Court approving this Agreement, Seller has all requisite power and authority to enter into this Agreement and any other agreements, instruments of transfer, and other documents required to be executed and delivered pursuant to this Agreement, to which Seller is a party and to consummate the transactions contemplated hereby and thereby. This Agreement has been duly executed and delivered by Seller. Upon entry of a Sale Order by the Bankruptcy Court approving this Agreement, this Agreement shall constitute a valid and binding obligation of Seller, enforceable against Seller in accordance with its terms.

Section 3.2.    <u>Ownership of the Purchased Assets</u>. Seller represents and warrants that all of the Purchased Assets are owned by the Debtor.

Section 3.3.    <u>Title and Condition</u>. On the date of Closing and by virtue of entry of the Sale Order, Buyer will acquire the Purchased Assets free and clear of all Liens. The Purchased Assets are being sold on an "AS IS, WHERE IS" basis, with any and all faults.

**ARTICLE IV**

**REPRESENTATIONS AND WARRANTIES OF BUYER**

As an inducement to Seller to enter into this Agreement, Buyer represents and warrants to Seller as follows:

Section 4.1.    <u>Organization and Good Standing</u>. Buyer is a limited liability company, duly organized, validly existing and in good standing under the laws of Ohio.Section 4.2.    <u>Authorization of Agreement; No Conflict; Consents</u>. Buyer has all requisite power and authority to enter into this Agreement and to consummate the transactions contemplated hereby. The execution, delivery, and performance of Buyer's obligations under this Agreement and the consummation of the transactions contemplated hereby have been duly authorized by all necessary corporate action on the part of Buyer. This Agreement has been duly executed and delivered by Buyer. This Agreement constitutes a valid and binding obligation of Buyer, enforceable against Buyer in accordance with its terms.

Section 4.3.    <u>No Financing</u>. As of the date hereof and on the Closing Date, Buyer will have sufficient funds available to deliver full payment of the Purchase Price to Seller, and otherwise consummate the transactions contemplated by this Agreement.

Section 4.4.    Litigation.  Buyer is not a party to, or subject to, any pending or threatened legal proceeding which could adversely affect Buyer's ability to complete the purchase of the Purchased Assets and otherwise consummate the transactions contemplated by this Agreement.

## ARTICLE V

## ADDITIONAL AGREEMENTS

Section 5.1.  Bankruptcy Court Approval.  This Agreement is subject to, and conditioned upon, approval of the Bankruptcy Court.  Subject only to Seller's duties and obligations under the Bankruptcy Code to accept the highest and best offer for the Purchased Assets, Seller agrees to use his best efforts to obtain Bankruptcy Court approval and any other approvals and orders necessary for the consummation of the transactions contemplated hereby.  Seller further agrees to use his best efforts to obtain from the Bankruptcy Court a waiver of the fourteen-day stay period under Fed. R. Bankr. P. 6004(h).

Section 5.2.  Further Action.  Each of the parties hereto shall execute such documents (including, without limitation, the Ancillary Documents) and other papers and take such further actions as may be reasonably required or desirable to carry out the provisions hereof and the transactions contemplated hereby or, at or after the Closing, to evidence the consummation of the transactions contemplated pursuant to this Agreement.  Upon terms and subject to the conditions hereof, each of the parties hereto shall use commercially reasonable efforts to take, or cause to be taken, all actions and to do, or cause to be done, all other things necessary, proper or advisable to consummate and make effective as promptly as practicable the transactions contemplated by this Agreement and to obtain in a timely manner all necessary waivers, consents and approvals.

Section 5.3.  Risk of Loss; Casualty.  Until the Closing Date, as between the parties hereto, the risk of loss or damage to any of the Purchased Assets by fire or other casualty or any cause whatsoever shall be upon Seller.  Seller agrees to provide Buyer prompt written notice of any known material damage or destruction to any of the Purchased Assets.

## ARTICLE VI

## CONDITIONS TO CLOSING

Section 6.1.  Conditions to Obligations of Each Party.  The respective obligations of each party to consummate the transactions contemplated hereby shall be subject to the fulfillment at or prior to the Closing of the following conditions:

(a)    Bankruptcy Court Order.  The Bankruptcy Court shall have entered a Sale Order approving this Agreement and all other transactions contemplated hereby and the Sale Order shall be in full force and effect and shall not be subject to any stay imposed by Bankruptcy Rule 6004(h) or any order of the Bankruptcy Court or the United States District Court for the District of Delaware.  The Sale Order also shall (i) approve this Agreement and authorize the sale to Buyer of the Purchased Assets, free and clear of all Liens; (ii) provide that any such Liens attach to the net sale proceeds; (iii) provide either that no competing bids were received and/or that the Purchase Price is the highest and best offer for the Purchased Assets; (iv) provide that the Purchase Price

represents fair value for the Purchased Assets and the sale is in the best interests of the bankruptcy estate; (v) incorporate findings that Buyer is a good faith purchaser within the meaning of 11 U.S.C. §363(m) and in accordance with the requirements set forth in <u>Abbotts Dairies of Pennsylvania, Inc</u>., 788 F.2d 173 (3rd Cir. 1986), and (vi) provide that Buyer is not an insider as that term is defined in 11 U.S.C. §101(30), and that adequate notice of the sale hearing was provided.

(b)     <u>Sale Procedures</u>.  Although the proposed sale of the Purchased Assets shall be submitted by Seller to the Bankruptcy Court as a private sale, Buyer acknowledges and agrees that Seller, as a trustee subject to the oversight and under the jurisdiction of the Bankruptcy Court, may be required to accept a higher and better bid for the Purchased Assets, and that an auction may be required to obtain higher or better bids for the Purchased Assets.  If, prior to a sale hearing, Seller receives a higher and better offer for all or certain of the Purchased Assets, as Seller may determine in his sole discretion, Buyer understands and agrees that Seller may convene an auction or some other process to obtain the highest and best bid for the Purchased Assets, provided that in no event shall Seller accept a higher and better offer for the Purchased Assets without affording Buyer the right to submit a topping bid(s) at an auction or otherwise.

Section 6.2.  <u>Conditions Precedent to Buyer's Obligations</u>.  The obligation of the Buyer to purchase the Purchased Assets and to consummate the transactions contemplated hereby is subject to and conditioned upon the performance, prior to or on the Closing Date, of each of the following (unless waived or extended in writing by Buyer):

(a)     All the terms and conditions of this Agreement to be materially complied with and performed by Seller on or before the Closing Date, including the delivery to Buyer of all documents and instruments referred to in this Agreement.

(b)     All representations and warranties by Seller contained in this Agreement or in any written document executed and delivered by Seller pursuant hereto or in connection herewith shall be true and correct or, if applicable, satisfied, in all material respects when made and on and as of the Closing Date, unless when made such representation and warranty was stated to relate only to such date or such other time.

(c)     There shall not have been any material damage, destruction or other material adverse change in the Purchased Assets, whether or not covered by insurance, except as otherwise specifically permitted in this Agreement.

(d)     The Sale Order shall have been entered.

(e)     The Closing shall occur no later than February 24, 2020, unless the failure for Closing to occur by that date is due to Buyer's actions or failure to act.

Section 6.3.  <u>Conditions Precedent to Seller's Obligations</u>.  The obligations of Seller to sell the Purchased Assets and to consummate the transactions contemplated hereby is subject to and conditioned upon the performance, prior to or on the Closing Date, of each of the following (unless waived or extended in writing by Seller):

(a)     All the terms and conditions of this Agreement to be materially complied with and performed by Buyer on or before the Closing Date, including the delivery to Seller of all documents and instruments referred to in this Agreement.

(b)     All representations and warranties by Buyer contained in this Agreement or in any written document executed and delivered by Buyer pursuant hereto or in connection herewith shall be true and correct or, if applicable, satisfied, in all material respects when made and on and as of the Closing Date, unless when made such representation and warranty was stated to relate only to such date or such other time.

(c)     The timely delivery to Seller of the full Purchase Price.

(f)      The Sale Order shall have been entered.

(g)     The Closing Date shall occur within two (2) business days after entry of the Sale Order, provided any otherwise applicable stay under Bankruptcy Rule 6004(h) is waived and not in effect.  Otherwise, the Closing Date shall occur two (2) business days after the Sale Order becomes final and non-appealable.

## ARTICLE VII

## POST-CLOSING ACCESS

Section 7.1.    On and after the Closing, Buyer shall be afforded necessary access during normal business hours to the Columbus Locations to remove the Purchased Assets.  All Purchased Assets not removed by Buyer within five business days from entry of the Sale Order (unless such Sale Order has been stayed) shall be deemed Excluded Assets and shall be abandoned and become the property of the respective owners of the subject Columbus Locations.  For the avoidance of doubt, Buyer will have no obligation whatsoever to store, handle, treat, dispose, transport, or otherwise remove any Purchased Asset or any other property or material that may be located at the Columbus Locations or otherwise associated with the Purchased Assets.

## ARTICLE VIII

## TERMINATION

Section 8.1.    Termination.  This Agreement may be terminated at any time prior to the Closing:

(a)     by either party to this Agreement, if the Sale Order has not been entered on or before February 21, 2020, and the party seeking to terminate this Agreement is not in breach thereof;  or

(b)     by either party to this Agreement, if the conditions for Closing, (including but not limited to the waiver or expiration of the fourteen day stay period or other Court-ordered

stay) have not been met within five business days after entry of the Sale Order and the party seeking to terminate this Agreement is not in breach thereof; or

        (c)      by either party to this Agreement, in the event of a material breach or misrepresentation under this Agreement by the other party that is not cured within five calendar days after written notice thereof is given by the party alleging such material breach or misrepresentation (subject to extension in the event such breach cannot reasonably be cured within such period); provided, however, that no cure period shall apply to Buyer's obligation to deliver the full Purchase Price, net of any Deposit, to Seller at Closing.

        Section 8.2.    <u>Effective Upon Notice</u>.  Termination by either party in accordance with any provision of Section 8.1 shall be effective immediately upon the giving of notice thereof.

        Section 8.3.    <u>Effect of Termination</u>.   In the event of termination of this Agreement as provided in Section 8.1, this Agreement shall be of no further force and effect.

## ARTICLE IX

## GENERAL PROVISIONS

        Section 9.1.    <u>Time Is of the Essence</u>.  The parties agree that time is of the essence with respect to all provisions of this Agreement.

        Section 9.2.    <u>Survival of Representations, Warranties, and Agreements</u>.   No representations or warranties made by Seller or Buyer in this Agreement or in any Ancillary Document delivered pursuant to this Agreement shall survive beyond the Closing Date.

        Section 9.3.    <u>Expenses</u>.  Except as otherwise provided in this Agreement, each of Seller and Buyer shall bear its own fees and expenses incurred in connection with the negotiation and execution of this Agreement and each other agreement, document and instrument contemplated by this Agreement and the consummation of the transactions contemplated hereby and thereby.

        Section 9.4.    <u>Notices</u>.  All notices and other communications under this Agreement shall be in writing and shall be deemed given (i) when delivered personally by hand (with written confirmation of receipt), (ii) when sent by facsimile (with written confirmation of transmission), (iii) when sent via electronic communication, or (iv) one business day following the day sent by overnight courier (with written confirmation of receipt), in each case at the following addresses, electronic mail, and facsimile numbers (or to such other address, electronic mail, or facsimile number as a party may have specified by notice given to the other party pursuant to this provision):

        (a)     if to Buyer:

The Team Management, LLC
503 S. Front Street, Suite 250
Columbus, Ohio 43215
Phone: (940) 453-8668
Attn: David Whinham

with a copy to counsel for Buyer:

Titus G. Donnell
Donnell & Thomas Law, LLC
503 S. Front Street, Suite 250
Columbus, Ohio 43215
Phone: (614) 586-1818
Fax: (614) 222-0792
titus@donnellthomaslaw.com

(b)    if to Seller:

Don A. Beskrone, Chapter 7 Trustee
P.O. Box 272
Wilmington, DE  19899
Phone: (302) 654-1888
dbeskronetrustee@gmail.com

with a copy to counsel for Seller:

Ashby & Geddes, P.A.
c/o Michael DeBaecke
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
Phone: (302) 654-1888
Fax: (302) 654-2067
mdebaecke@ashbygeddes.com

Section 9.5.  Further Assurances.  From time to time, as and when requested by either party, the other party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments as may be reasonably necessary to effect the transactions contemplated by this Agreement.

Section 9.6.  Amendment.  Following full execution and delivery of this Agreement to each party, this Agreement may not be amended or modified except by an instrument in writing signed by Seller and Buyer.

Section 9.7.  Waiver.  At any time prior to the Closing, either party hereto may (a) extend the time for the performance of any of the obligations or other acts of the other party hereto, (b) waive any inaccuracies in the representations and warranties made by the other party and contained

herein or in any document delivered by the other party pursuant hereto and (c) waive compliance by the other party hereto with any of the agreements or conditions contained herein.  Any such extension or waiver shall be valid if set forth in an instrument in writing signed by the party to be bound thereby.

Section 9.8.  Headings; Schedules.  Title headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.  Any reference to schedules or exhibits attached hereto shall signify that such schedules or exhibits are incorporated herein by reference.

Section 9.9.  Severability.  If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner adverse to any party.  Upon such determination that any term or other provision is incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible to the end that the transactions contemplated hereby are fulfilled to the greatest extent possible.

Section 9.10.  Entire Agreement; Amendments and Waivers.  This Agreement (including the exhibits and schedules attached hereto, if any) represents the entire understanding and agreement between the parties hereto with respect to the subject matter hereof.  This Agreement can be amended, supplemented or changed, and any provision hereof can be waived or extended, only by written instrument making specific reference to this Agreement signed by the party against whom enforcement of any such amendment, supplement, modification, extension, or waiver is sought.   No action taken pursuant to this Agreement, including without limitation, any investigation by or on behalf of any party, shall be deemed to constitute a waiver by the party taking such action of compliance with any representation, warranty, or agreement contained herein.  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a further or continuing waiver of such breach or as a waiver of any other or subsequent breach.  No failure on the part of any party to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power or remedy by such party preclude any other or further exercise thereof or the exercise of any other right, power or remedy.  All remedies hereunder are cumulative and are not exclusive of any other remedies provided by law.

Section 9.11.  Governing Law and Consent to Jurisdiction and Venue.  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to application of the conflict of laws rules of Delaware or any other jurisdiction.

Section 9.12.  Submission to Jurisdiction; Consent to Service of Process.  The parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court for the resolution of any claim or dispute arising out of or relating to this Agreement and the transactions contemplated hereby (and agree not to commence any litigation relating thereto except in the Bankruptcy Court).

Section 9.13.  <u>Counterparts; Facsimiles or Electronic Signatures</u>.  This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement.  The exchange of copies of this Agreement and of signature pages by electronic mail or facsimile transmission shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes.

Section 9.14.  <u>Binding Effect; Assignment</u>.    This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns.  Nothing in this Agreement shall create or be deemed to create any third-party beneficiary rights in any person or entity not a party to this Agreement except as provided below.  No assignment of this Agreement or of any rights or obligations hereunder may be made by either Seller or Buyer (by operation of law or otherwise) without the prior written consent of the other party hereto and any attempted assignment without the required consents shall be void; provided, however, that Buyer may assign its right to acquire any or all of the Purchased Assets and its other rights hereunder to an entity wholly owned by it that also assumes all of Buyer's obligations hereunder (but such assumption shall not relieve Buyer of its obligations hereunder), with the consent of Seller, which shall not be unreasonably withheld.  No permitted assignment of any rights hereunder and/or assumption of obligations hereunder shall relieve the parties hereto of any of their obligations.  Upon any such permitted assignment, the references in this Agreement to Buyer shall also apply to any such assignee unless the context otherwise requires.

Section 9.15.  <u>Interpretation</u>.  The division of this Agreement into Articles and Sections is for convenience and reference only and shall not in any way affect the meaning or interpretation hereof.  Whenever used in this Agreement, (i) words importing the singular number only shall include the plural and vice versa, (ii) words importing the masculine gender shall include the feminine gender, (iii) the words "include" and "including" mean "including without limitation," (iv) reference to any agreement, document or instrument means such agreement, document or instrument as amended or modified and in effect from time to time prior to the date of this Agreement in accordance with the terms thereof, (v) reference to any law means such law as amended, modified, codified, replaced or reenacted, in whole or in part, and in effect at the time particular acts or conditions of compliance are to be determined, including rules and regulations promulgated thereunder, and reference to any section or other provision of any law means that provision of such law in effect at the time a particular act or condition of compliance is to be determined and constituting the substantive amendment, modification, codification, replacement or reenactment of such section or other provision, (vi) "hereunder," "hereof," "hereto," and words of similar import shall be deemed references to this Agreement as a whole and not to any particular Article, section or other provision hereof, unless expressly provided otherwise, (vii) the word "notice" shall mean written notice, (vii) the word "or" shall not be exclusive, and (xi) references to documents, instruments or agreements shall be deemed to refer as well to all addenda, exhibits, schedules or amendments thereto.

IN WITNESS WHEREOF, Seller and Buyer have caused this Agreement to be executed as of the date first written above by themselves or their respective duly authorized representative.

**SELLER**:

By: _____
Don A. Beskrone, solely as Chapter 7 Trustee

**BUYER**: The Team Management, LLC

By: _____
Name:   David R. Whinham
Title:   President / CEO