**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| | ) | Case No. 19-12541 (JTD) |
| ARENA FOOTBALL LEAGUE LLC, | ) | |
| *et al.*,[1] | ) | (Jointly Administered with Case No. 20-10403) |
| | ) | |
| Debtors. | ) | **Hearing Date: 5/28/2020 at 10:00am (ET)** |
| | ) | **Objections Due: 5/11/2020 at 5:00pm (ET)** |
| | ) | |

**APPLICATION OF DON A. BESKRONE, CHAPTER 7 TRUSTEE,
FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 327, 328, 363, AND 554
(I) AUTHORIZING THE EMPLOYMENT OF
GREAT AMERICAN GLOBAL PARTNERS, LLC AS AUCTIONEER, (II)
APPROVING AUCTION SALES OF SUBSTANTIALLY ALL OF THE DEBTORS'
REMAINING ASSETS, FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES, AND INTERESTS, (III) AUTHORIZING BUT NOT REQUIRING
THE ABANDONMENT OF CERTAIN TANGIBLE ASSETS IN CONNECTION
THEREWITH, AND (IV) GRANTING RELATED RELIEF**

Don A. Beskrone, solely in his capacity as Chapter 7 Trustee (the "Trustee") for the above-captioned debtors (the "Debtors") and their bankruptcy estates, pursuant to sections 105(a), 327, 328, 363, and 554 of Title 11 of the United States Code (as amended, the "Bankruptcy Code"), Rules 2002, 2014, 6004, 6007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 2014-1, 2016-2 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), hereby files his application (the "Application") for entry of an order (i) authorizing the employment of Great American Global Partners, LLC ("GA") as auctioneer, (ii) approving the sale(s) at auction(s) of substantially all of the Debtors' tangible and intangible assets, free and clear of all liens, claims, encumbrances, and interests, (iii) approving but not

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers, are: Arena Football League LLC (3730) and Arena Football One, L.L.C (3730).

requiring the abandonment of certain unsold or unremoved tangible assets, and (iv) granting related relief.  In support of the Application, the Trustee relies upon the Declaration of Paul Brown attached hereto as **Exhibit 1** and the Declaration of Don A. Beskrone attached hereto as **Exhibit 2**.  In support of the Application, the Trustee respectfully states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.

2. This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2).

3. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory and legal predicates for the relief requested herein are sections 105, 327, 328, 363, and 554 of the Bankruptcy Code, Bankruptcy Rules 2014, 2016, 6004, 6007, and 9014, and Local Rules 2002-1, 2014-1, 2016-2, and 6004-1.

5. Pursuant to Local Bankruptcy Rule 9013-1, the Trustee consents to entry of a final order or judgment by the Court with respect to this matter if it is determined the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

# BACKGROUND[2]

**A.   The Debtors, the League, the Bankruptcy Cases, and the Assets.**

6. Prior to the Petition Date (as defined below), each of the Debtors at some point in time owned and operated the Arena Football League (the "League"), a professional indoor tackle football league. Upon information and belief, the League was founded in 1987.

7. A prior 2009 bankruptcy case filed in the United States Bankruptcy Court for the Northern District of Illinois involved a former debtor entity named Arena Football League, LLC (a different entity from the above-captioned AFL Debtor). Certain petitioning creditors had filed an involuntary chapter 7 petition. In response, the debtor moved to convert the case to a voluntary chapter 11 case.

8. Soon thereafter, a chapter 11 trustee (Alex Moglia) was appointed. Toward the end of 2009, he sold substantially all of the debtor's assets to asset purchaser Arena Football One, L.L.C. (the current AF One Debtor).

9. The League, as reconstituted, returned to action thereafter. The debtor in the 2009 bankruptcy case, after consummation of the asset sale, changed its name to Indoor Football Estate LLC. The 2009 chapter 11 case converted to a chapter 7 case several months after consummation of the sale.

10. A further out-of-court restructuring involving AF One and AFL apparently occurred on or about April 26, 2019. The AFL Debtor was formed as a Delaware limited liability company in early 2019 to facilitate such restructuring.

---

[2] The Trustee recites this background based on a preliminary and ongoing investigation of the Debtors and their respective assets and businesses. The Trustee reserves his right to amend or alter this background or other asserted statements of fact as the Trustee and his professionals learn more through further investigation.

11.   For the 2019 season, the League operated with six teams, including two new teams.[3]

12.   On or about October 29, 2019, the AFL Debtor announced it had shut down the League and halted operations.

13.   On November 27, 2019, AFL commenced its Chapter 7 Case in this Court. (*See* Case No. 19-12541.) Along with its chapter 7 petition, AFL filed its schedules of assets and liabilities (the "AFL Schedules") and statement of financial affairs (the "AFL SOFAs"). (*See* Dkt. No. 1.)[4]

14.   On February 20, 2020, AF One commenced its Chapter 7 Case (together with the AF One Debtor's case, the "Bankruptcy Cases") in this Court. (*See* Case No. 20-10403.) Along with its chapter 7 petition, AF One filed its schedules of assets and liabilities (the "AF One Schedules") and statement of financial affairs (the "AF One SOFAs"). (*See* AF One Case, Dkt. No. 1.)[5]

15.   AFL is a Delaware limited liability company. AF One is a Nevada limited liability company.

16.   On page 2 of its chapter 7 petition, AF One listed the AFL Debtor as an affiliate. *See also* AF One Schedule H, page 110 of 163 (Arena Football League LLC listed as co-debtor).

17.   The same law firm (Duane Morris LLP) filed the bankruptcy petition for each Debtor. Moreover, the Debtors apparently, at present, have the same two 50/50 members (Anacostia Sports LLC and Trifecta Sports Entertainment, LLC). (*See* AF One petition, page 8 of 163; *see* AFL SOFAs, pages 112 and 117 of 160.)

---

[3] For the 2019 season, the League operated with teams based in Philadelphia, PA; Washington, DC; Baltimore, MD; Atlantic City, NJ; Albany, NY; and Columbus, Ohio.

[4] References to docket numbers in this Application correspond to docket entries in the AFL Case unless otherwise indicated.

[5] The Trustee serves as permanent chapter 7 trustee for each of the Debtors. The Trustee held and concluded a section 341 meeting in each Bankruptcy Case. The Trustee obtained orders in each Bankruptcy Case approving employment of Ashby & Geddes as his general bankruptcy counsel. [*See* Dkt. Nos. 19 and 45]

{01547026;v2 }                                            4

18.     Randall Boe signed each Debtor's bankruptcy petition in his capacity as "Commissioner". The Schedules filed in each Bankruptcy Case appear nearly identical in most respects, including with respect to assets listed, the names of creditors and their respective claim amounts, and identified executory contracts.[6]

19.     Throughout its Schedules, AF One references a "Distribution and Contribution Agreement dated April 26, 2019" between it and AFL whereby "the rights to this [insert specific asset] were transferred from [AF One] to [AFL]." (*See also* AF One Schedule H, page 110 of 163 (Debtor "transferred all of its assets and liabilities to Arena Football League LLC pursuant to the Distribution and Contribution Agreement dated April 26, 2019.")

20.     Based upon (i) the above facts, (ii) sworn public filings by each Debtor, (iii) the Trustee's investigation performed to date, and (iv) testimony provided by Randall Boe at the section 341 meeting of creditors held in each of the Bankruptcy Cases, it is believed the AF One Debtor ultimately transferred all or nearly all of its tangible and intangible assets to the AFL Debtor in connection with the April 2019 restructuring transaction. Investigation continues.[7]

21.     As part of operations, the Trustee understands the Debtors owned football-related and other specialized equipment and tangible personal property that facilitated and allowed teams

---

[6] By order entered on March 31, 2020 [Dkt. No. 42], the Court approved the joint administration (for procedural purposes only) of the Bankruptcy Cases.

[7] In an effort to proceed with caution and completeness, the Trustee seeks authority to sell all right, title, and interest in substantially all of the tangible and intangible assets currently owned by each Debtor. The relief sought is necessary and appropriate because, for example, the April 2019 restructuring transaction occurred out of court, without the benefit of a court order. Certain records (such as records maintained in the United States Patent and Trademark Office) may not have been updated to reflect the results and effects of prior transactions (including the April 2019 restructuring transaction) involving one or more of the Debtors. Moreover, apparently certain assets transferred to the AFL Debtor in the April 2019 restructuring transaction came from certain affiliates of either Anacostia Sports or Trifecta Sports because at that time, those affiliates (rather than one of the Debtors) owned and operated teams in the League. By obtaining authority to sell assets of each Debtor, the Trustee will be able to assure potential asset purchasers they will receive the benefits of a Bankruptcy Court order authorizing the transfer of the entirety of each Debtor's interest in the particular purchased Assets, of whatever nature and extent, "AS IS, WHERE IS".

and players to play indoor tackle football. *See e.g.* AFL Schedules, pages 10 through 14 of 160. [Dkt. No. 1.]

22. As explained below, the Trustee has undertaken efforts to investigate, inspect, and marshal assets and property of the Debtors with the goal of liquidating the assets and property for the benefit of the Debtors' estates and creditors. In addition to confronting and dealing with the ongoing challenges posed by the COVID-19 global pandemic, the Trustee's efforts have been hampered to date by, among other things, the sizable number of locations where assets were and currently are held and the continued lack of available funds in the bankruptcy estates.[8]

23. Notwithstanding the numerous challenges, by order entered on February 20, 2020 [Dkt. No. 40], this Court approved the Trustee's motion to sell via private sale the Debtor's tangible assets (the "Columbus Assets") located in several Columbus, Ohio storage locations. That order also approved the abandonment of the Columbus Assets not removed by the purchaser in the exercise of its discretion. The sale of the Columbus Assets closed on February 21, 2020.

**B.    The Proposed Sale Via Auction of Substantially All of the Debtors' Remaining Assets**

24. Since his appointment, the Trustee has sought to investigate and marshal the Debtors' assets and property. Tangible assets currently are scattered amongst approximately 9 primary locations (collectively, the "Locations").[9] (Beskrone Decl., ¶ 16.)

25. The Trustee has spoken with, among others, representatives of the Debtors and multiple third party representatives (including representatives of (i) potential auctioneers, (ii) owners or lessors of the afore-mentioned Locations, (iii) certain former counsel to the Debtors, (iv) the AFL players' union, and (v) multiple parties who have expressed interest in certain assets

---

[8] Each Debtor listed the same multiple bank accounts in its respective Schedules. Each account, however, was listed with a $0.00 balance. (*See* AFL Schedules at pages 7 and 8 of 160.)

[9] As of the commencement of the AFL Bankruptcy Case, tangible assets of the Debtors were located at approximately 17 different locations spread out over 4 states plus the Washington, D.C. area.

of the Debtors) to gauge and determine the most efficient means to identify, marshal, and liquidate property of the estate for the benefit of creditors. (*Id*. at ¶ 11.)

26.  Most third parties have cooperated thus far with the Trustee's efforts to inspect the assets and property of the Debtors. Representatives from entities such as Monumental Sports & Entertainment (an affiliate of Anacostia Sports), Argosy Management Group (located in Pennsauken, NJ), the Times Union Center (Albany, New York), Spaceworks/Atomic Storage Group (Mullica Hill, NJ), and the New Jersey Casino Reinvestment Development Authority, have made arrangements to provide information and photographs, allow for consensual inspection of assets, and ultimately provide for turnover of assets and property to the Trustee or his agents. (*Id*. at ¶ ¶ 15-17; s*ee e.g.* AFL SOFAs at pages 114 and 115 of 160.)

27.  As described in the Beskrone Declaration, on January 31, February 3 and 4, February 7, and February 28, the Trustee traveled to and participated in multiple site visits conducted at Locations in southern New Jersey, Maryland, Washington, D.C., and Albany, New York. At these Locations, the Trustee inspected tangible assets and in connection therewith, took dozens of pictures. (Beskrone Decl., ¶ 16.)

28.  The tangible assets and personal property utilized by teams in the League included without limitation, field systems for each team (including goal posts, dasher boards, artificial turf, and netting systems)[10]; helmets, footballs, coolers, water bottles, equipment bags, tackling dummies, down markers, medical equipment, and other football-player and football-team related equipment; T-shirts, pants, and practice jerseys; team advertising merchandise and apparel; team-specific memorabilia; office furniture and supplies; computers, televisions, cameras, and related

---

[10] The field systems allowed for rapid deployment and removal and were typically stored (along with other Debtor property) at or near the venues that hosted each of the League's teams. Following the sale of the Columbus Assets, the Trustee currently has 5 separate field systems to sell.

equipment and accessories; and other property and equipment used to operate an indoor football team in the League. (*See* AFL Schedules at pages 10 through 14 of 160.)

29. In connection with operation of the League, the Debtors also owned intangible assets, such as domain names and intellectual property primarily in the form of trademarks, but also including a few patents and copyrights (and certain pending applications relating to such intellectual property). *Id*. at pages 15 through 17 of 160. Parties interested in purchasing such intellectual property and other intangible assets included as part of the Assets currently up for sale are encouraged to review available public records to determine current status of all such Assets.

30. Multiple parties have reached out to the Trustee to express preliminary interest in purchasing certain discrete Assets. But, to date, no party has pursued in any active and substantial manner a purchase of substantially all of the Debtor's assets. Moreover, no party (other than the purchaser of the Columbus Assets) has submitted a formal, binding bid to purchase any of the Assets. (Beskrone Decl., ¶ 19.)

31. Based on the above, the Trustee has determined it is appropriate and in the best interests of creditors and the bankruptcy estates to employ an auctioneer to market and sell substantially all of the Debtor's remaining tangible and intangible assets (the "Assets"), "As Is, Where Is," with all faults and with no representations or warranties of any kind.[11] (*Id*. at ¶¶ 21, 25.)

---

[11] The Assets proposed for Sale are identified in the respective Debtors' Schedules and more generally on Exhibit A attached to the Auction Agreement. The only assets, property, or property of the estate not included as part of the currently proposed auction process and related sales would be items such as corporate minute books; corporate books and records; computer software programs purchased or licensed by the Debtors from third party providers; any other Debtor business-related records, contracts, and other documents used in connection with League membership or operations; customer lists; any accounts receivable or notes receivable; any refunds of any kind, including any insurance-related refunds or state or federal tax refunds or other tax attributes; and any other rights, claims, or causes of action (available under the Bankruptcy Code, any other applicable statute, law, or in equity) the Trustee is entitled to pursue on behalf of creditors and the bankruptcy estates.

32.     In this regard, the Trustee proposes to employ GA to implement a marketing and on-line auction process to effectuate a prompt sale(s) of the Assets.  Given the multiple Locations, the current economic and social circumstances, and the projected auction and recovery value of the tangible Assets, the Trustee and GA believe a sale(s) of at least the tangible Assets in one or perhaps several bulk lots will represent the most cost-effective, value-maximizing solution for the bankruptcy estates.  (Beskrone Decl., ¶ 22.)

33.     Subject to Bankruptcy Court approval, the Trustee has entered into a proposed Exclusive Auction and Consulting Agreement (the "Auction Agreement") with GA, a copy of which is attached hereto as **Exhibit 3**.

34.     As set forth in the Brown Declaration, GA has extensive experience and expertise in providing asset disposition services via on-line auction sales and other sale methods.  For many years, GA along with its professionals and affiliates have served as auctioneers to debtors and trustees in bankruptcy cases filed throughout the United States.  (Brown Declaration, ¶ 3.)

35.     GA proposes to conduct a comprehensive online marketing campaign prior to and in lead up to an online auction(s) to be held within approximately 30 days from entry of an order approving this Application, following consultation with the Trustee.  GA's proposed compensation would consist solely of an 18% buyer's premium (the "Buyer's Premium") collected by GA from each purchaser of Assets. (Auction Agreement, § 8(b).)   Each Buyer's Premium is separate from any applicable winning bid and sale proceeds that ultimately would flow to the Trustee for the benefit of the bankruptcy estates.  (*Id.*)

36.     Additionally, the Trustee has agreed to reimburse GA from the auction sale proceeds for its reasonable and documented costs and expenses incurred in preparing for,

marketing, and conducting the auction sales, up to the aggregate sum and cap of $15,000. (*Id*. at § 9.)

## RELIEF REQUESTED AND BASIS THEREFOR

37. By this Application, the Trustee seeks entry of an order in substantially the form attached hereto as **Exhibit 4** (i) authorizing employment of GA as auctioneer pursuant to the terms set forth in the Auction Agreement, (ii) approving the sale(s) by auction(s) of substantially all of the Debtors' Assets, free and clear of all liens, claims, encumbrances, and interests (collectively, the "Liens") (iii) authorizing but not requiring the abandonment of any tangible Assets not sold at auction or otherwise not removed from the Locations by purchasers, and (iv) granting such other relief as this Court deems just and appropriate.

### I. Employment of GA is Appropriate and should be Approved.

#### A. GA is Qualified and Disinterested.

38. Section 327(a) of the Bankruptcy Code provides that a chapter 7 trustee may employ an accountant, auctioneer, or other professional to represent or assist the trustee in carrying out his duties only if such accountant, auctioneer or professional is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code and does not hold or represent an interest adverse to the estate.

39. The Trustee seeks to employ GA pursuant to section 327 of the Bankruptcy Code based on GA's extensive knowledge and expertise in marketing and conducting similar sales of tangible and intangible assets.

40. As set forth in the Brown Declaration, the Trustee further believes GA has no disqualifying conflicts of interest. (Brown Declaration, ¶¶ 6-11.) To the best of the Trustee's current knowledge, GA neither holds an adverse interest in connection with the Bankruptcy Cases

nor represents any other entity having an adverse interest in connection with the Debtors, except as may be set forth in the Brown Declaration.

41. Thus, as set forth in the Brown Declaration, and subject to the disclosures therein, GA is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, such that none of GA's officers, directors, managers, members, partners, and employees:

(a) Is a creditor, an equity security holder, or an insider of the Debtors;

(b) Is or was, within 2 years before the filing of the Bankruptcy Cases, a director, officer, or employee of the Debtors; and

(c) Has an interest materially adverse to the interests of the estates or any class of creditors or equity holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors or for any other reason.

Therefore, the Trustee believes employment of GA is in the best interests of creditors and the bankruptcy estates and should be approved.

### B. Employment of GA under Section 328(a) of the Bankruptcy Code is Appropriate.

42. Section 328(a) of the Bankruptcy Code empowers a chapter 7 trustee appointed under section 701 of the Bankruptcy Code to employ, subject to Court approval, professional persons to perform services for a chapter 7 trustee under any reasonable terms and conditions of employment, including on a retainer, hourly, fixed or percentage fee, or a contingent fee basis. *See* 11 U.S.C. § 328(a).

43. The Trustee respectfully requests, pursuant to section 328 of the Bankruptcy Code, that GA be compensated in accordance with the terms of the Auction Agreement. The Trustee submits that, in his experience, this compensation arrangement is consistent with, typical of, and in the range of compensation arrangements with auctioneers providing similar services to clients such as the Trustee, both in and out of chapter 7. (Beskrone Decl., ¶ 20.) The Trustee therefore submits that, in his experience, GA's proposed compensation is fair and reasonable and should be approved pursuant to section 328 of the Bankruptcy Code.

**C. Waiver of Compliance with Local Rule 2016-2 Information Requirements Relating to Compensation Requests.**

44. Pursuant to Local Rule 2016-2(h), the Trustee seeks a waiver of Local Rule 2016-2's information requirements because the Auction Agreement authorizes GA to be compensated without further order of the Court.

45. Because GA's compensation is based solely upon its receipt of Buyer's Premiums paid directly by purchasers, without regard to hours worked or services rendered, the Trustee submits there is no need for GA to file fee applications and GA should not be required to maintain or file time records in accordance with Local Rule 2016-2 and the United States Trustee Fee Guidelines. GA will be bonded and promptly after conclusion of the auction(s), the Trustee will file a full report of sale showing the results of the auction process, sale proceeds received, and the amount of compensation and expense reimbursement received by GA. Based on the foregoing, the Trustee respectfully requests that the Court approve waiver of the Local Rule 2016-2 requirements.

**II.    Approval of Asset Sales Via Auction.**

46. By this Application, the Trustee also seeks entry of an order approving sales of the Assets pursuant to sections 363(b) and 363(f) of the Bankruptcy Code and in accordance with the terms of the Auction Agreement. In accordance with Local Rule 6004-1, the Trustee highlights the following aspects of the proposed online auction sales:

- <u>Auction date(s) (tentative)</u>: within approximately 30 days from entry of an order approving this Application; auction(s) may be conducted on rolling basis, in the discretion of GA upon consultation with the Trustee;

- <u>Sale proceeds proposed for release without further order of the Court (including costs required to facilitate sale)</u>:
    - Payment to GA of reasonable and documented costs and expenses up to $15,000;

- o   Payment of any applicable and collected sales tax, to be remitted by GA to any applicable taxing authority.[12]

  - Bankruptcy Rule 6004(h): The Trustee seeks relief from the 14-day stay under Bankruptcy Rule 6004(h) so that the proposed auction process and expected final sales may proceed immediately.

### A. Approval of the Auction Agreement.

47.     As set forth above, the Trustee believes GA has the requisite expertise and is uniquely qualified to provide auctioneer services to the Trustee and bankruptcy estates. The Trustee has further determined, based on his experience, that the terms of the Auction Agreement are fair and reasonable. (Beskrone Decl., ¶ 24.)

48.     The Trustee believes, in his business judgment, that the proposed employment of GA under the terms set forth in the Auction Agreement is in the best interests of creditors based upon GA's experience and expertise, the likelihood that the proposed marketing campaign and online auctions will maximize the value of the Assets, and GA's willingness to structure its employment and services around receipt of a Buyer's Premium(s) that is reasonable in amount and will be separate from sale proceeds that will be made available for the benefit of creditors and the bankruptcy estates. (*Id*. at ¶¶ 21, 22, 24, 25)

### B. Approval of Asset Sales Pursuant to § 363(b).

49.     The Trustee submits that ample authority exists for approval of the sale(s) of the Assets. Section 363(b) of the Bankruptcy Code permits a trustee to sell assets outside of the ordinary course of business. Section 363(b) of the Bankruptcy Code provides, in pertinent part,

---

[12] GA will be responsible for charging and collecting Buyer's Premiums, any applicable sales tax, and the purchase price from each purchaser of Assets. GA will remit any collected sales tax to the appropriate taxing authority. Any Buyer's Premium or sales tax collected shall not be considered or treated as sale proceeds the Trustee is entitled to receive under the Auction Agreement for the benefit of the bankruptcy estates. (Auction Agreement, §§ 8-11.)

"[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).

50. Section 105(a) of the Bankruptcy Code further provides "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

51. Finally, Bankruptcy Rule 6004 states, in relevant part, "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1).

52. Courts interpreting section 363(b)(1) of the Bankruptcy Code have held that sale transactions should be approved when supported by the sound business judgment of the trustee. *See, e.g., In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly adopting the articulated business justification and good faith tests of *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983)); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (concluding Third Circuit adopted a "sound business purpose" test in *Abbotts Dairies*); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate . . . courts require the debtor to show that a sound business purpose justifies such actions").

53. Here, the Trustee respectfully submits a sale(s) of the Assets is both warranted and reasonable. As a fiduciary, the Trustee is charged with maximizing value. To that end, the Trustee seeks to move forward to realize whatever value may be obtained for the Assets. Accordingly, a sale is both justified and necessary. (Beskrone Decl., ¶¶ 24-25.)

**C. Approval of Asset Sales Free and Clear of All Liens Pursuant to § 363(f).**

54.     Section 363(f) of the Bankruptcy Code permits a trustee to sell property free and clear of another party's interest in the property if:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.

11 U.S.C. § 363(f).  Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will be sufficient to permit sales of the Assets free and clear of all Liens that may be asserted in these Bankruptcy Cases.  *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (sale "free and clear" may be approved provided requirements of at least one subsection are met); *see also In re Dundee Equity Corp.,* 1992 Bankr. LEXIS 436, * 12 (Bankr. S.D.N.Y. Mar. 6, 1992) (a "sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met").

55.     The AFL Debtor's Schedules list three purported secured creditors: (i) Anacostia Sports LLC (also one of two 50% members of each Debtor); (ii) Sportsfield Specialties, Inc.;[13] and (iii) White Winston Select Asset Funds, LLC.[14] (*See* AFL Schedules at pages 20 through 22 of 160.)  Notice of this Application will be provided to these purported secured creditors and they

---

[13] Creditor Sportsfield Specialties recently filed a proof of claim in the AFL Case that did not assert secured creditor status. (Claim No. 52)

[14] The Trustee reserves all rights, challenges, objections, claims, and defenses with respect to the merits of any purported secured claims asserted in connection with the Assets or otherwise.

will have an opportunity to object or otherwise respond. Nevertheless, in order to maximize the value of the Assets, the Trustee proposes to transfer all of the Assets to any purchaser free and clear of all Liens (if any).

56. The Trustee respectfully submits that, with respect to valid lienholders (if any), one or more of the tests of section 363(f) will be satisfied with respect to the transfer(s) of the Assets. In particular, any valid lienholders that exist will be adequately protected by having their Liens, if any, attach to any net cash proceeds of the subject Assets, after costs of sale (including any payments to be made to GA), in the same order of priority, and with the same validity, force and effect that such Liens had prior to the sale(s), subject to any rights, challenges, objections, claims, and defenses possessed by the Trustee and the bankruptcy estates.

57. The Trustee further submits the absence of an objection to the relief sought in this Application is, or should be deemed, consent within the meaning of section 363(f)(2) of the Bankruptcy Code. *See Hargrave v. Township of Pemberton* (*In re Tabone, Inc.*), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to sale motion, secured creditor deemed to consent under section 363(f)(2) of the Bankruptcy Code); *see also Pelican Homestead & Sav. A'ssn v. Wooten (In re Gabel)*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same). Accordingly, the Trustee requests that any sale(s) of the Assets be free and clear of all Liens, with Liens, if any, attaching to the net proceeds of such sale(s) (less any amounts payable to GA or to other third parties in connection with sales of the Assets).

**D.    Certain Tangible Assets Should be Deemed Abandoned.**

58. Pursuant to section 554(a) of the Bankruptcy Code, "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). In abandoning property under

section 554, the trustee "need only demonstrate that [he] has exercised sound business judgment in making the determination to abandon." *In re Contract Research Sols., Inc.*, 2013 WL 1910286, at *4 (Bankr. D. Del. May 1, 2013) (internal quotation marks omitted).

59. Here, the Trustee has determined, in his business judgment, that any of the tangible Assets not sold at auction or otherwise not removed by purchasers within a reasonable time after conclusion of the auction(s) will serve no benefit and will have little to no net value to the bankruptcy estates. (Beskrone Decl., ¶ 23.) Accordingly, it is unnecessary to continue to store or monitor such Assets and property at any expense to the estates. To the best of the Trustee's knowledge and understanding, abandonment of such Assets poses no threat to public safety and does not contravene any law or regulation. *Id.*

60. Any tangible Assets not sold at auction or otherwise not removed by purchasers (in their sole discretion, and subject to such purchasers being afforded timely and available access to the purchased Assets to conduct removals) from the respective Locations should be deemed abandoned, effective 14 calendar days after the conclusion of the relevant auction(s). On that date, such abandoned Assets shall become the property of the respective third party then in possession or control of such abandoned Assets at the respective Locations.

**F. Waiver of Bankruptcy Rule 6004(h).**

61. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property … is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). The Trustee requests that any approval order contain a provision waiving the 14-day stay under Bankruptcy Rule 6004(h).

62. The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before implementation of an order. *See* Advisory Committee Notes to

Fed. R. Bankr. P. 6004(h). Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the stay period, Collier suggests the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Lawrence P. King, Collier on Bankruptcy, ¶ 6004.10 (16th ed. 2010). Collier further provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to seek a stay, unless the court determines that the need to proceed sooner outweighs the interests of the objecting party. *Id*.

63. The Trustee seeks permission to have GA commence the marketing and auction sale efforts immediately in order to preserve and maximize the value of the Assets. The Trustee also seeks confirmation that all auction sales will be final, enforceable, and that immediately following conclusion of the auction(s) and payment of required amounts, purchasers may remove their purchased Assets from the Locations promptly and without delay. Accordingly, the Trustee hereby requests that the Court waive any applicable 14-day stay period under Bankruptcy Rule 6004(h) or otherwise.

## NO PRIOR REQUEST

64. No prior request for the relief sought in this Application has been made to this Court or any other court.

## NOTICE

65. Notice of this Application will be served upon (i) the Office of the United States Trustee for the District of Delaware; (ii) GA; (iii) counsel for the Debtor; (iv) any known purported creditors; (v) known representatives of the Locations; (vi) parties who previously have expressed an interest in any of the Assets; and (vii) all parties who have requested notice in the Bankruptcy

Cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Trustee submits that no other or further notice is required.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Trustee respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit 4,** granting the relief requested herein and such other and further relief as the Bankruptcy Court may deem just and proper.

Dated: April 22, 2020

**ASHBY & GEDDES, P.A.**

*/s/ Michael D. DeBaecke*

_____
Michael D. DeBaecke (No. 3186)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
Telephone: (302) 654-1888
mdebaecke@ashbygeddes.com

*Counsel to Don A. Beskrone, Chapter 7 Trustee for Arena Football League LLC and Arena Football One, L.L.C.*